UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number 1:20-cv-01711

Jenna Smith,
  Plaintiff,

v.

Equifax Information Services, LLC,
  Defendant.

## COMPLAINT

1. Plaintiff is an individual who resides in Colorado Springs, CO.

2. Defendant Equifax Information Services, LLC ("Equifax") is a consumer reporting agency located in Atlanta, Georgia.

3. Within the five years preceding this complaint, Equifax has mixed Plaintiff's credit file with another consumer named Jeana L. Plummer. Plaintiff did not discover this until around late April / early May 2020, when she was applying for a personal loan with her bank.

4. Mixed or mis-merged files occur when credit information relating to one consumer is placed in the file of another, thus creating a false description of both consumers' credit histories.

5. Mis-merging occurs most often when two or more consumers have similar names, Social Security numbers ("SSN"), or other identifiers.

6. Mixed or mis-merged files are a frequent problem.  One study found that 44% of credit reporting complaints to the FTC involved mis-merged files.

7. Mixed files can also result in debt collection harassment and lawsuits against innocent consumers. One of the first steps a collection attorney will take when they receive an assigned file is to request a skip trace from one of the national credit bureaus. These reports are often the broadest matched files provided by the bureaus. It is common therefore, for collection attorneys to receive and incorrectly match reports and to sue the wrong consumer.

8. Mixed files occur largely because the credit bureaus' computers do not use sufficiently rigorous criteria to match consumer data precisely, even when such unique identifiers as Social Security numbers are present.  For example, the credit bureaus will include information in a consumer's file even when the Social Security numbers do not match, but other information appears to match.

9. Equifax allows an 8 for 9 SSN match – on information and belief, Plaintiff and Jeana Plummer have an 8 for 9 SSN match, and Equifax has mixed their credit files because of this, and because both consumer's names start with a "J."

10. In one case, Defendant Equifax had a jury verdict entered against it in the amount of $2.7 million in punitive damages and $219,000 in actual damages in the Angela Williams case, which involved the plaintiff's credit file being mixed with another consumer named Angelina Williams.

11. In one case, Defendant Equifax had a jury verdict entered against it in the amount of approximately $18.4 million in punitive damages in the Julie Miller case, which involved the plaintiff's credit file being mixed with another consumer.

12. Mixed files could be prevented by requiring the credit bureaus to use strict matching criteria when placing information into a consumer's credit report. The most critical reform would be to require an exact match of Social Security numbers, which would reduce mixed file problems significantly.

13. However, Defendant Equifax has chosen to be excessively and unreasonably over-inclusive because, as the FTC noted in a 2004 report mandated by the Fair and Accurate Credit Transactions Act of 2003: "lenders may prefer to see all potentially derogatory information about a potential borrower, even if it cannot be matched to the borrower with certainty. This preference could give the credit bureaus an incentive to design algorithms that are tolerant of mixed files." An erroneously low credit score may even provide a creditor with more profit, because the consumer will be charged a higher interest rate, a practice known as "risk based pricing".

14. Defendant Equifax has been aware of mixed file errors for decades. In the early to mid-1990s, the FTC reached consent orders with the credit bureaus, including Defendant Equifax, requiring them to improve their procedures to prevent mixed files. However, almost two decades later, mixed files remain a significant problem.

15. Equifax reported a host of inaccurate information on Plaintiff's consumer reports, including the wrong name, addresses, student loan accounts, an ENT loan, and

multiple other tradelines that did not belong to Plaintiff. All of the inaccurate information was about the other consumer, Jeana Plummer.

16. Plaintiff disputed the inaccurate information with Equifax over the phone.

17. In early June 2020, Equifax sent Plaintiff a document which purported to be a "notice" of the results of the reinvestigations into Plaintiff's dispute. The notice informed Plaintiff that some of the inaccurate information would be deleted, and some of the inaccurate information would not be taken off her credit file.

18. However, on June 10, 2020, when Plaintiff purchased a copy of her Equifax credit file, the inaccurate information that Equifax had previously told her was deleted, was reinserted back onto Plaintiff's credit file within days.

## COUNT I, FAIR CREDIT REPORTING ACT

19. Plaintiff re-alleges and incorporates the above allegations as if fully set out herein.

20. Defendant willfully and negligently violated the FCRA in the following ways:

    a. Failing to follow reasonable procedures to ensure maximum possible accuracy of the information in Plaintiff's consumer reports. 15 U.S.C. § 1681e(b). Equifax violated this provision by setting up its computer algorithms too loose, by allowing Plaintiff's information to become mixed with Jeanna Plummer's information merely because the consumers have a similar SSN and both first names start with a "J", and ignoring other differences such as birthdates, last names, addresses and different SSNs. Equifax sold inaccurate consumer reports about Plaintiff to various third parties, including Quicken Loans, Factual Data,

      Chase, Guaranteed Rate, First National Bank, Capital One, Citi Bank, U.S. Bank and Synchrony Bank.

   b. Failing to conduct reasonable reinvestigations into Plaintiff's disputes, failing to review and consider all relevant information, failing to notify the source of the information about Plaintiff's disputes, and then allowing information previously deleted to be reinserted without obtaining the certification by the furnishers, all in violation of 15 U.S.C. § 1681i.  Equifax outsourced the handling of Plaintiff's disputes to the "low wage operation center" in India, where employees are poorly compensated and expected to crank out a high volume of dispute responses with the emphasis being on quantity, not quality.  Further, the employees are not trained on how to conduct a reinvestigation in compliance with the FCRA, and instead are trained to simply "verify" information as accurate when it is not, and to simply copy whatever the data furnisher says, a practice in the industry known as "parroting" which has been widely condemned by several federal courts.  For example, if Chase says that the earth is flat, then Equifax employees are trained to report that the earth is flat, no matter what evidence is provided that the earth is round.  Equifax's practices are designed to save the company money in the form of wages, so that Equifax does not have to devote much resources to investigating consumer disputes, which is not profitable for the company.

21. Equifax's violations of the FCRA caused Plaintiff actual damages in the form of harm to credit score, worry, stress, inconvenience, and emotional distress.

WHEREFORE, Plaintiff prays for the following relief:

a. Actual damages to be determined at trial;
b. Punitive damages to be determined at trial;
c. Attorney fees and costs;
d. For such other relief as may be proper.

s/ Matthew R. Osborne
11178 Huron St., Ste 7
Northglenn, CO 80234
(303) 759-7018
matt@mrosbornelawpc.com

*Attorney for Plaintiff*

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**